# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 899 | **DATE** | 6/5/2012 |
| **CASE TITLE** | Richard Schmidt vs. Village of Forest Park *et al.* | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion for leave to file a second amended complaint *instanter* [61] is denied.

■ [ For further details see text below.]   Docketing to mail notices.

## STATEMENT

**Introduction.** Plaintiff Richard Schmidt seeks to file a second amended complaint, adding a state law claim for malicious prosecution to go with his § 1983 excessive force claim. Defendants object, arguing that plaintiff has been aware of the facts underlying this claim for 14 months and inexplicably waited until the end of fact discovery to add it. Allowing this claim, defendants further argue, would prejudice them by requiring additional discovery. We agree.

**Background.** The facts alleged in the proposed second amended complaint are essentially the same as in the original complaint. On March 1, 2008, at around 7:30 p.m., plaintiff was at Slainte Irish Pub in Forest Park, Illinois. (2AC ¶ 12.) The Forest Park police department was called about a possible disturbance (¶ 13.) Officers Morrissette, Miller, and Pater arrived and arrested plaintiff for breaking a table. (*Id.*) Plaintiff was a Chicago police officer who was off duty at this time. The three officers transported plaintiff to the Forest Park Police Station. (*Id.*) Plaintiff was then allegedly beaten until he was unconscious. (¶¶ 14-15.) Officers also allegedly discharged a TASER gun seven times into plaintiff's lower back and left leg. (¶ 16.) Plaintiff allegedly did nothing to provoke these actions.

In February 2010, plaintiff filed his original complaint, naming four police officers, the Police Chief, and the Village of Forest Park as defendants. Plaintiff asserted an excessive force claim under § 1983 and four related state law claims. Defendants filed a combined motion to stay and dismiss. They requested a stay of the federal claim until the resolution of plaintiff's criminal trial arising out of the same incident. They moved to dismiss the four state law claims because they were barred by the one-year statute of limitations in the Tort Immunity Act, 745 ILCS 10/8-101. This Court granted the stay motion and set a briefing schedule on the motion to dismiss. Plaintiff did not file a response brief. Defendants argued in their reply brief that the failure to respond was an implicit admission that his state law claims were untimely. We agreed and dismissed those claims. (Docket # 12.)

Plaintiff's criminal trial took place in late September 2010. We will summarize the charges and the trial. This description is taken from defendants' response brief, and plaintiff has not objected to the accuracy of the

underlying facts. Following the March 1, 2008 incident, two of the officers (Pater and Morrissette) signed criminal complaints against plaintiff for aggravated battery against a police officer. Pater alleged that plaintiff hit him in the face and elbowed him. Morrissette alleged that plaintiff tackled him and grabbed his legs.

At the bench trial, Pater testified that plaintiff elbowed him leaving a tender spot on his body and that plaintiff scratched him during a struggle. A picture of the scratch was introduced at the trial. Morrissette testified that his head was bruised by plaintiff during the struggle. Plaintiff's counsel made the following argument about the officers' alleged injuries:

> Officer Pater doesn't have a mark on him. He's got a scratch on the palm of his hand. You heard from Morrissette that Morrissette never once put in any police report that he received a bruise on his head. Evidence technicians were called. He never asked anybody to take a photograph of his head or take a photograph of any injury that he may have sustained.

(*Id.* at 3.) The Judge found plaintiff not guilty based on the following analysis:

> THE COURT: I have found the officers to be credible in their testimony. I have found that their conduct was proper and appropriate. I have found that the Defendant who testified is credible in his testimony. I have found after reviewing the evidence that there is not sufficient evidence beyond a reasonable degree to show intent to do these things or knowingly to do these things. Therefore, there will be a finding of not guilty. The case is over.

(Docket # 63-2 at p. 85.)

After the trial, the stay in this case was lifted and discovery proceeded. Magistrate Judge Mason has been actively overseeing discovery and has issued a number of rulings. Depositions of plaintiff and the four police officers took place in the fall of 2011. A few weeks thereafter plaintiff noticed up a motion for leave to file a first amended complaint. This complaint merely removed the four state law claims already dismissed a year earlier and dropped a claim for emotional damages. The motion was granted without objection from defendants on November 1, 2011.

In his present motion for leave to file a second amended complaint, plaintiff offered the following explanation for why he was now filing this motion:

> Discovery has recently been completed and the depositions of the defendants proceeded. Officers Pete Morrissette and Daniel Pater testified that they did not sustain any serious or significant injuries and neither sought medical attention. Rather plaintiff was the only one who sustained injuries and as a result of the charges was relieved of his duties as a Chicago Police Officer, was not allowed to carry a firearm and placed on a no-pay status from March 2008 until February 2010.

(Pl. Mot. at p. 2.) Though not explicitly stated, plaintiff appears to be suggesting that officers changed their testimony from the criminal trial a year earlier by admitting for the first time that they "did not sustain any serious or significant injuries." This interpretation is further supported by plaintiff's assertion that he was the "only one who sustained injuries."

Defendants responded by questioning plaintiff's assertion that the officers were not injured. They point out that plaintiff's criminal trial counsel acknowledged in his closing argument that the officers were injured, although he then went on to argue that the injuries were not serious. Defendants suggest that plaintiff is equivocating about whether there were *any* injuries versus whether there were *serious* injuries. According to defendants, any injury, regardless of its severity, is enough to support a charge of aggravated battery if the victim is a police officer. *See* Defs. Resp. at 11 (citing 720 ILCS 5/12-4(b)(18). Defendants thus believe that

| STATEMENT |
|---|

the evidence from the depositions in the fall of 2011 was not new but had been available since the 2010 criminal trial. Therefore, plaintiff has known about this evidence for 14 months, before discovery started in this case. Yet, he waited until now to file the malicious prosecution claim, after fact discovery has closed. Defendants also argued in their response brief that adding the new malicious prosecution claim now would prolong discovery and prejudice them.

In his reply brief, plaintiff does not try to rebut defendants' arguments about the officers' injuries being known since 2010. Instead, plaintiff abandons this original explanation and offers a new rationale. He states that new evidence was discovered two weeks before he filed his motion. Plaintiff's counsel was contacted by two individuals who claim to have had a run-in with one of the four officer defendants, Dan Miller. The incident took place in the evening of January 8, 2012 when a man named Donald Smith discovered that his car had a boot on it for unpaid parking tickets. Smith believed he only had two unpaid tickets, which he thought was not enough to justify a boot. So he called the police department. Officer Miller and a parking attendant arrived. An argument ensued, and Officer Miller allegedly began yelling. Smith remembered an article he read in the newspaper about an incident involving a police officer who had been severely beaten by Forest Park officers. (It is not clear when Smith read this article, as the incident happened four years earlier.) Based on his recollection of the article, Smith stated: "I would expect to get this kind of treatment after I heard Forest Park police officers beat up a Chicago Police Officer." (Docket 60-1 at ¶ 7.) Smith admits he was being sarcastic. Miller then responded by yelling this comment:

> Yeah, I'm the mother fucker that did it. I kicked his ass because I can and nobody's gonna do any fucking thing about it. Guess what! He's fucking suing me and I don't give a fuck because I'm going to win.

(*Id.* ¶ 8.) Plaintiff views this as an admission by Miller. He interprets Miller's statement that he beat plaintiff because "I can" as an admission that the beating was unprovoked. Plaintiff seeks to draw a negative inference from the fact that Miller during this argument "did not state" that he beat plaintiff because plaintiff was (i) resisting arrest, (ii) acting violent, and (iii) placing a police officer's life at risk. (Reply at 4.)

**Discussion.** The parties agree on the well-known Rule 15(a) standard governing whether a court should grant leave to file an amended complaint. "Courts are to use their discretion under Rule 15(a) to liberally grant permission to amend pleadings so long as there is not undue prejudice to the opposing party or undue delay, bad faith or dilatory motive on the part of the movant." *Sides v. City of Champaign*, 496 F.3d 820, 825 (7th Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The decision whether to allow an amendment is reviewed under the abuse of discretion standard. *Sides*, 496 F.3d at 825. Defendants' two main arguments, as previewed above, are undue delay and prejudice.

On the question of undue delay, we agree with defendants that plaintiff's explanations are unpersuasive. The original explanation -- that the 2011 depositions brought forth new evidence -- does not hold up under close scrutiny. As defendants demonstrated in their response brief, these officers testified at the criminal trial about the injuries and there is no evidence that they changed their testimony a year later when their depositions were taken. Plaintiffs' criminal trial counsel even acknowledged the officers were injured to some degree, although he argued the injuries were slight (e.g. a scratch). Thus, at that point, plaintiff could have moved for leave to file his malicious prosecution claim. If he had done so, then defendants would have been given fair notice and would have been able to prepare for this claim and to take discovery on it. The mere fact that plaintiff did not even attempt to defend his original rationale in his reply brief raises a question about the sincerity of the original explanation.

Turning to plaintiff's second explanation, this argument could be rejected without analysis simply based on the fact that it was only first raised in his reply brief. *See Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir.2009) (arguments raised for the first time in a reply brief are waived). It is true that, contemporaneously with the filing of the present motion, plaintiff filed a separate motion seeking to amend his Rule 26(a)(1)

| STATEMENT |
|---|

disclosures to add these two new witnesses, and that this motion was granted by Judge Mason. However, in this separate motion, plaintiff did not mention that these witnesses were being offered to support a malicious prosecution claim as opposed to the excessive force claim. And more importantly, he never offered this rationale in the present motion where he seeks leave to file the second amended complaint. The upshot is that we don't have defendants' response to this new explanation.

Even ignoring the waiver problem, we still find this second explanation insufficient to justify the late filing of the motion. First, as noted above, all the direct evidence regarding the malicious prosecution claim was available to plaintiff in 2010. Why do these two impeachment witnesses tip the balance, turning what was otherwise insufficient evidence for filing the claim into one that passes the threshold for viability? Second, plaintiff has characterized Miller's statement as a boastful admission that there was no probable cause to arrest him for hitting a police office. But this interpretation is open to debate, as it relies on the negative inference that Miller should have, during a heated argument, articulated a full and coherent rationale for why he hit plaintiff and that the failure to do so means he didn't have any justification. Moreover, while one could certainly view the general tone of the alleged statement as boastful, Miller did go on to state that there was a pending lawsuit about the issue and that he believed he is "going to win." One could view this statement as implying that he would win on a legitimate legal ground. Third, the new evidence relates to defendant Miller. Yet, the proposed claim does not name Miller as a defendant and is instead directed at two other officers.

Defendants' other main argument is that adding this claim now at the end of discovery will prejudice them by requiring more discovery. Defendants state that they will need to (among other things) subpoena documents from agencies related to the prosecution of plaintiff. This task, according to defendants, is complicated by the fact that plaintiff petitioned the court for an order of expungement. This order was granted but then later stayed after defendants objected. Defendants also state that they will need discovery on plaintiff's lost wages claim, which was not explored during his deposition because it was unrelated to the excessive force claim. This discovery would likely require depositions.

Plaintiffs dispute that the records have all been expunged and argues that the Village of Forest Park "presumably" has all the records relating to the criminal proceedings. (Reply at 7.) Plaintiff also states that defendants have twice moved to extend discovery. As to the lost wages claim, plaintiff has offered to provide a lost wages ledger in a matter of days to make discovery easier. (*Id.* at 6.)

In considering these arguments, we note that each side is making a prediction about the amount of discovery -- and time -- that will be needed. It may be true, as plaintiff claims, that defendants overstate the extent of this discovery. It is also not clear, as defendants suggest, whether some of the arrest records have been lost. Nonetheless, it is reasonable to assume that some discovery will need to be taken. Defendants will be forced to re-think their trial strategy and spend more time and money on a claim that, as noted above, could have been filed *before* the start of discovery. We find that this constitutes prejudice. The facts here are similar to *Sides*, where the Seventh Circuit affirmed the district court's denial of leave to amend in a case where the plaintiff waited seven months before moving to file an amended complaint, at which point discovery was set to close in 20 days. *Sides*, 496 F.3d at 825-26. The Seventh Circuit concluded that this late filing constituted both undue delay and prejudice. *Id.* A similar situation exists here. In sum, we find that the long delay, the questionable serial explanations, and the additional discovery that would be required are sufficient grounds under Rule 15(a) for denying the motion.